**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**IMRAN AWAN** *et. al.*,<br><br>*Defendants*. | Case No: 1:17-cr-00161-TSC |

**MOTION TO MODIFY CONDITIONS OF RELEASE**

COMES NOW Defendant Imran Awan, through undersigned counsel, and respectfully moves this Court to modify his conditions of release. In support of this motion Mr. Awan states as follows:

Mr. Awan is currently a subject of the High Intensity Supervision Program ("HISP"). As such, he must wear a GPS monitoring device, abide by a curfew that requires him to be home between the hours of 10 p.m. and 6 a.m., and restrict his travel to a 50-mile range. Magistrate Judge Robinson first imposed these conditions at Mr. Awan's initial appearance. At that hearing, the government argued that Mr. Awan was a flight risk, and that HISP and the attendant conditions would keep Mr. Awan from fleeing the country. At his arraignment and status conference, the defense requested that this Court modify Mr. Awan's conditions of release. The government repeated its arguments that Mr. Awan was a flight risk and asked that this Court deny the defense request to modify Mr. Awan's pre-trial release conditions. The Court requested that the defense submit a written motion to modify Mr. Awan's conditions.

Both parties agree that Mr. Awan poses no danger to the community, so the only question is whether Mr. Awan is a flight risk. He is not. Mr. Awan is an American citizen, as is his wife. He is a graduate of the Johns Hopkins University. His three U.S. citizen children were born, raised, and schooled in Virginia, where Mr. Awan and his family still own a home. While Mr. Awan has traveled occasionally to Pakistan, his entire life is here in the United States. Flight would mean

abandoning the life Mr. Awan and his family have built in this country and starting a new one in Pakistan, something they have never even considered as a response to the charges in this case. The government's position that Mr. Awan will attempt to flee the jurisdiction is based primarily on the facts that his family traveled to Pakistan earlier this year and he was arrested at the airport boarding a flight to Pakistan. The government maintains this is sufficient evidence to suggest Mr. Awan's intent to leave the country permanently.

Mr. Awan never had any such intent. Mr. Awan's family "abruptly" traveled to Pakistan because he and his wife were abruptly fired in early February of this year, had no income sufficient to meet their soon-to-be-mounting mortgage obligations, and they and their children were being harassed at their front door and even at their school by the so-called "media" (such as the would-be intervenor in this case) obsessed with absurd conspiracy theories that have somehow evolved to incorporate Mr. Awan. Mr. Awan's wife and children traveled to allow the family to rent out their home to be able to satisfy mortgage obligations and to temporarily escape the media frenzy to a location with some family support and limited living expenses. They traveled on return tickets with an extended return date with the knowledge that they could eventually return in a standby seat on any earlier date that the one listed on the ticket. The family has used this travel arrangement in the past to maintain flexibility regarding their dates of travel. Unfortunately, the media frenzy has not abated, and the family's financial situation has not improved; nonetheless, Mr. Awan's wife and the children will be returning to the United States to attempt to resume their lives as soon as possible. Certainly, once they are back in the United States — once Ms. Alvi has returned voluntarily to face the charges against her — there can exist no plausible argument that either she or Mr. Awan presents any risk of flight.

Even before she returns, however, Mr. Awan maintains that the evidence suggesting he is a flight risk is insufficient to impose the restrictions under which he currently awaits trial. Mr. Awan was not "fleeing the country." Rather, he was traveling to see his family and assist them in their return, as well as to see extended family and attend to personal business matters. He duly requested

leave from his job at the House of Representatives and he made no secret of his plans as he informed friends and family that he was traveling.[1] Critically, he purchased his ticket 10 days in advance of his travel date. One does not abscond from justice by giving the authorities over a week's notice. He was at the airport with minimal luggage and money that would allow him to purchase items and settle expenses for his family once he arrived. The government continues to maintain that Mr. Awan's ticket was, in essence, a one-way ticket. That is simply not the case. It was a round-trip ticket with an extended return date of the sort the family typically uses because they are familiar with the relevant airline and airport policies which allow them to return in standby seats on most dates (except a few overcrowded holiday-related dates) without penalty. Mr. Awan has traveled in this manner — booking a return date five or six months out and returning on standby — numerous times in the past.

Furthermore, the government has been investigating Mr. Awan for at least the better part of a year, an investigation that includes a search of his home, all of his emails, and his phone. Yet, with all of that investigation, the government did not present any corroborating evidence that would support the contention that Mr. Awan planned on fleeing the jurisdiction.

The government also relies on the fact that Mr. Awan allegedly sent money to Pakistan as proof that he was not intending to return. Without admitting to the fact of the wire-transfers because they are the subject of counts 1 and 4 of the indictment, the Court can accept for the sake of argument that Mr. Awan transferred money to Pakistan. This does not suggest with any specificity that Mr. Awan was intending on remaining abroad. Mr. Awan has legitimate personal investments in Pakistan that he was traveling to attend to, and his family was (and is) in need of funds to cover their living expenses.

---

[1] *See, e.g.*, Anthony Man, *Wasserman Schultz talks about arrested aide Imran Awan*, Sun Sentinel, Aug. 3, 2017, at http://www.sun-sentinel.com/news/politics/fl-reg-wasserman-schultz-discusses-imran-awan-20170802-story.html (Mr. Awan "filed a form to take an unpaid leave of absence and talked to Wasserman Schultz's staff chief, Tracie Pough, about his departure and return dates").

Even if Mr. Awan wanted to "flee" the country, which he does not, he could not. The government is in possession of Mr. Awan's passports, he possesses no alternative identification that would allow him to travel internationally and the Department of Justice has surely informed the Department of State and the Department of Homeland Security that he cannot be issued a passport and that he cannot cross a border. Short of Mr. Awan trying to swim the Rio Grande, or otherwise secretly cross the border, Mr. Awan has no ability to leave the country. There is simply nothing in Mr. Awan's profile or the circumstances of this case to remotely suggest such a concern.

The HISP restrictions are unnecessary to secure Mr. Awan's presence in the jurisdiction and they are unduly burdensome. Mr. Awan now makes his living driving for ride-sharing companies. He needs to be able to drive between 10 p.m. and 6 a.m., a critical "peak" revenue-generating time for drivers, especially on weekends. He also cannot feel confident in accepting fares because once he has accepted a fare, should the passenger wish to travel outside of the 50-mile radius,[2] requiring Mr. Awan to cancel the fare, his driver rating on the ride-sharing system would be damaged and it could eventually lead to him being terminated from the system entirely. Additionally, should Mr. Awan's children return earlier than their mother, Mr. Awan would be their primary caregiver, and it would be nerve-wracking for him to assume these responsibilities while under the burden of the HISP restrictions.[3] For the above stated reasons, along with the fact that Mr. Awan has been in perfect compliance with his pre-trial conditions, Mr. Awan respectfully requests this Court to adopt the least restrictive means to ensure his presence in Court. Mr. Awan has no objection to weekly reporting with pre-trial services in person.

---

[2] This is especially possible if Mr. Awan were to pick up a fare closer to the edge of the radius, such as the BWI or Dulles airports.

[3] To clear up any confusion the Court may have had regarding this argument, if the two older children do arrive before Ms. Alvi, it would only be for a few weeks and it would be during this time that Mr. Awan would be the sole caregiver for his children and therefore he would have to violate his curfew if an emergency occurred between 10 p.m. and 6 a.m. Once Ms. Alvi returns, Mr. Awan will want to continue to try and earn as much money as he can by working for ride sharing companies during the peak evening hours.

WHEREFORE: Mr. Awan respectfully moves this Court to issue an order removing him from HISP, removing the GPS device and releasing him on his personal promise to appear. In the alternative, Mr. Awan respectfully asks this Court to modify his conditions to remove the curfew and expand his travel range to 150 miles.

Respectfully submitted,

Dated: September 6, 2017

/s/ Christopher Gowen
Christopher Gowen
DC Bar No.: 995102
Jesse I. Winograd
DC Bar No.: 986610
Gowen Rhoades Winograd & Silva PLLC
513 Capitol Court N.E., Suite 100
Washington, D.C. 20002
Phone: (202) 380-9355
Facsimile: (202) 499-1370
E-mail: cgowen@gowenrhoades.com
E-mail: jwinograd@gowenrhoades.com
*Counsel for Defendant*