UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
UNITED STATES OF AMERICA,      .
                               .
           Plaintiff,          .  CR No. 17-0161 (TSC)
                               .
      v.                       .
                               .
01 IMRAN AWAN,                 .  Washington, D.C.
02 HINA ALVI,                  .  Tuesday, August 21, 2018
                               .  11:00 a.m.
           Defendants.         .
. . . . . . . . . . . . . . . .
```

SENTENCING/STATUS HEARING
BEFORE THE HONORABLE TANYA S. CHUTKAN
UNITED STATES DISTRICT JUDGE

<u>APPEARANCES</u>:

| | |
|---|---|
| For the Government: | J.P. COONEY, AUSA<br>U.S. Attorney's Office<br>555 Fourth Street, NW<br>Washington, DC 20530<br>(202) 252-7281 |
| For Defendant Awan<br>Sentencing Hearing: | CHRISTOPHER J. GOWEN, ESQ.<br>Gowen Silva & Winograd PLLC<br>513 Capitol Court, NE<br>Suite 100<br>Washington, DC 20002<br>(202) 408-5400 |
| For Defendant Alvi<br>Status Hearing: | NIKKI LOTZE, ESQ.<br>Lotze Mosley LLP<br>400 7th Street, NW<br>Suite 202<br>Washington, DC 20004<br>202) 759-7497 |
| Court Reporter: | BRYAN A. WAYNE, RPR, CRR<br>U.S. Courthouse, Room 4704-A<br>333 Constitution Avenue, NW<br>Washington, DC 20001<br>(202) 354-3186 |

Proceedings reported by stenotype shorthand.
Transcript produced by computer-aided transcription

1          P R O C E E D I N G S

2          THE DEPUTY CLERK:  Your Honor, we have Criminal Action

3     17-161, United States of America versus Imran Awan and Ms. Hina

4     Alvi.  I'm going to ask that counsel approach the lectern and

5     identify yourselves for the record.  Thank you.

6          MR. COONEY:  Good morning, Your Honor.  J.P. Cooney

7     for the United States.

8          THE COURT:  Good morning.

9          MR. GOWAN:  Good morning, Your Honor.

10    Chris Gowan on behalf of Imran Awan.

11          THE COURT:  Good morning.

12          MS. LOTZE:  Good morning, Your Honor.

13    Nikki Lotze on behalf of Hina Alvi, who's also present.

14          THE COURT:  Good morning.

15    Good morning, Mr. Awan and Ms. Alvi.

16    All right.  We are here for the sentencing of Mr. Awan.

17    I believe that as a part of Mr. Awan's plea agreement, the

18    charges against Ms. Alvi will be dismissed at the conclusion

19    of the sentencing.  Is that right, Mr. Cooney?

20          MR. COONEY:  That is correct, Your Honor.

21          THE COURT:  All right.

22    Okay.  Mr. Awan has pleaded guilty to making a false

23    statement on a loan or credit application in violation of

24    18 U.S.C. § 1014.

25    Let me tell the parties what I've received and reviewed in

preparation for this sentencing.  I've received and reviewed the
presentence report and the sentencing recommendation from the
probation department and also the following documents that were
submitted by counsel in advance of the hearing:

I've received and reviewed a copy of the plea agreement
signed by Mr. Awan, sentencing memoranda from the government
and from Mr. Awan.  I've received letters from family and
friends including Joshua Rogin, Patrice Willoughby, Eva Dominguez,
Eric Joel Johnson, Altaf Taufique, Jameel Aalim-Johnson, and
Adeela Awan.

I've also reviewed, as exhibits to sentencing memoranda,
certain photographs, news articles, and Twitter posts that were
attached to defendant's sentencing memorandum.

That's what I've looked at.  Is there anything else that
I'm missing?  Mr. Cooney?

MR. COONEY:  Not from the government.

THE COURT:  Mr. Gowan?

MR. GOWAN:  No, Your Honor.

THE COURT:  All right.

Now, Mr. Awan, I know you have not been sentenced before,
so I will tell you how this will proceed.  As you may recall in
your plea, I had to ask you a number of questions to make sure
you were competent to make the plea, your plea was knowing and
voluntary.  Today I have to proceed in four steps, similarly.

The first is for me to determine whether you've reviewed

1    the presentence report and whether there are any outstanding

2    objections, and if so, to resolve those.

3         The second step is to determine what sentencing guidelines

4    and sentencing range applies to your case based on your criminal

5    history and considering any mitigating or aggravating factors

6    that could warrant a departure under the sentencing guidelines

7    manual.

8         The third step is to hear from the government, Mr. Cooney,

9    and any victims, of which there none in this case -- this is a

10   financial reporting crime, so there is no victim other than

11   society -- from your counsel, and I'll hear from you if you wish

12   to be heard about sentencing in this case.

13        The last step requires me to fashion what I consider a

14   just and fair sentence in light of all the factors set forth

15   in the statutes and at 18 U.S.C. § 3553.  You're going to hear

16   "18 U.S.C. § 3553(a)" a lot because that statute sets out the

17   factors that I must consider in sentencing any defendant.  As

18   part of this last step, I will actually impose sentence along

19   with any required consequences of the offense.

20        So, with regard to the presentence report, the final

21   presentence report and sentencing recommendation that were filed

22   in this case on August 17, Mr. Cooney, does the government have

23   any objection to any of the factual determinations set forth in

24   the presentence report?

25             MR. COONEY:  No objections.

1              THE COURT:  Are you expecting an evidentiary hearing

2    today?

3              MR. COONEY:  No.

4              THE COURT:  All right.

5         First let me ask you, Mr. Awan, if you'll rise with

6    your lawyer, are you fully satisfied with the services of

7    your lawyer, Mr. Gowan, in this case?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  All right.  Do you feel that you've had

10   enough time to talk with him about the probation department's

11   presentence report and the papers that were filed by the

12   government in connection with this sentencing?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  Okay.  Mr. Gowan, have you and Mr. Awan

15   read and discussed the presentence report?

16             MR. GOWAN:  We have, Your Honor.

17             THE COURT:  All right.  Are there any disputed issues

18   of fact?  That is, does Mr. Awan or you have any objection to

19   any of the factual statements set forth in the presentence

20   report?

21             MR. GOWAN:  We do not.

22             THE COURT:  All right.  You can be seated.

23        Hearing no objection, and with the understanding that all

24   outstanding objections have been resolved, the court will accept

25   the factual recitation set forth in the presentence report

1    regarding the circumstances of the offense, and, therefore, the

2    facts as stated in the presentence report will be my findings

3    of fact for the purposes of this sentencing.

4         Now we will discuss the guidelines range.  The presentence

5    report lays out the probation office's calculation of the

6    advisory guideline range that applies in this case.  This

7    calculation was done using the 2016 guidelines manual, and

8    it's as follows:

9         Beginning with the guidelines offense level, the applicable

10   guideline in this case is §2B1.1(a)(1) which sets a base offense

11   level of 7.  The government has represented that Mr. Awan has

12   demonstrated acceptance of responsibility in a manner that

13   entitles him to a two-level reduction under §3E1.1(a).

14   Therefore, before I consider any departures or variances,

15   Mr. Awan's total offense level, as I calculate it, is 5.

16        Is there any objection to this calculation of the offense

17   level?  Mr. Cooney.

18             MR. COONEY:  No.

19             THE COURT:  Mr. Gowan.

20             MR. GOWAN:  No, Your Honor.

21             THE COURT:  All right.  Turning to the applicable

22   criminal history category, the presentence investigation has

23   found that Mr. Awan has zero prior convictions that receive

24   criminal history points in the guidelines manual, thus

25   establishing a criminal history points score of zero and a

1    criminal history category of I.

2         Are there any objections to the criminal history

3    calculation, Mr. Cooney?

4              MR. COONEY:  No objection.

5              THE COURT:  Mr. Gowan?

6              MR. GOWAN:  No, Your Honor.

7              THE COURT:  All right.  Based on the offense level and

8    criminal history category I've just discussed, the presentence

9    report calculates the guidelines sentencing range to be zero

10   months to six months of imprisonment.  Having determined the

11   applicable guidelines range, the next step is for the court to

12   consider departures.

13        The presentence report notes that, pursuant to U.S.

14   Sentencing Guideline §5K2.20, when determining whether a

15   downward departure is warranted in this case, the court may

16   consider whether the instant offense was a single criminal

17   occurrence committed without significant planning, was of

18   limited duration, and represents a marked deviation by the

19   defendant from an otherwise law-abiding life.

20        The presentence report explains that presentation of this

21   information does not necessarily reflect a recommendation of a

22   departure by the probation office.  Neither party has mentioned

23   any grounds for a departure; that is, no party is arguing here

24   that there is any grounds for imposing a sentence outside of the

25   guidelines range that is based on the policy statements in the

1    guidelines manual.

2        The defendant has made an argument that this court should

3    vary from the guidelines.  But at this point, as I calculate the

4    applicable guidelines range, is there any basis or argument for

5    a departure, as distinguished from a variance, that the parties

6    wish to assert aside from that which was presented in the

7    presentence report?  Mr. Cooney?

8            MR. COONEY:  Not from the government, Your Honor.

9            THE COURT:  Mr. Gowan?

10           MR. GOWAN:  No, Your Honor.

11           THE COURT:  Now, Section 3553 requires me to consider

12   a variety of factors including the sentencing range that the

13   guidelines prescribed, which I've just discussed, and also the

14   applicable penal statutes.  So I'll take this moment to describe

15   generally the applicable statutory and guidelines penalties for

16   this offense.

17       The charge of making a false statement on a loan or credit

18   application, in violation of 18 U.S.C. § 1014, carries a maximum

19   term of imprisonment of 30 years.  As explained above, the

20   guideline sentencing range is zero to six months of imprisonment.

21       If a term of imprisonment is imposed, the statute provides

22   that Mr. Awan faces a term of supervised release following

23   imprisonment of not more than five years, and the guidelines

24   provide for a term of supervised release of between two and five

25   years.  If a sentence of imprisonment of one year or less is

imposed, a term of supervised release is optional.  Under

the statutes and sentencing guidelines, Mr. Awan is ineligible

for probation because the offense is a Class B felony.

The statute sets a maximum fine of $1 million, while

the guidelines fine range is $500 to $1 million.  A special

assessment of $100 per count is mandatory for Mr. Awan.  The

total is $100.  That special assessment is unpaid as of this

time.

Counsel, have I stated accurately the statutory and

guidelines framework under which we're operating with regard to

this case?  Mr. Cooney?

MR. COONEY:  Yes, you have, Your Honor.

THE COURT:  Mr. Gowan?

MR. GOWAN:  Yes, Your Honor.

THE COURT:  Before I discuss the other sentencing

factors that will bear on my final decision, I will at this

point notify, as is my practice, the parties of the particular

sentence the probation office has recommended, taking into

account the guidelines range, the available sentences, and all

of the various factors in §3553(a).

The probation office recommends a term of imprisonment of

time served, which is one day, and one-year -- that is 12 months

-- term of supervised release, and a special assessment totaling

$100.  The recommendation of the probation office is not based

on any facts and circumstances that have not already been

1    revealed to the parties in the presentence report.

2         Now, at this point I want to give the parties the

3    opportunity to address the sentencing guidelines and the range

4    and any other factors that bear on my consideration of a fair

5    and just sentence under §3553(a).

6         Mr. Cooney, do you wish to be heard?

7              MR. COONEY:  Thank you, Your Honor.

8         Your Honor, the government submitted sentencing papers

9    last week, and we stand on our position in the memorandum.

10   I'm happy to answer any questions that you have, but I know

11   that Your Honor has reviewed it, so I don't feel I need to go

12   into any detail.  But we do not object to the recommendation

13   of the probation office, and as we set forth in our papers, we

14   do not object to a noncustodial sentence.

15             THE COURT:  Thank you.  I don't have any questions.

16   Mr. Gowan.

17             MR. GOWAN:  Thank you, Your Honor, and thank you for

18   the opportunity to provide the written memo earlier.

19             THE COURT:  I'm sorry to interrupt you.  I have been

20   provided, and I assume counsel's been provided, copies of the

21   Pretrial Services status report on Mr. Awan, who continues to

22   remain in full compliance of the conditions of release, as does

23   his wife.

24             MR. COONEY:  I have reviewed that, Your Honor.

25             THE COURT:  Thank you.  Go on.

1          MR. GOWAN:   Thank you, Your Honor.   And as I was

2     saying, I appreciate the opportunity to provide that written

3     memo, and I can assure the court that my remarks today will not

4     go on as long as my memo did.

5          Because the government is not opposing a noncustodial

6     sentence, the difference between the positions that the

7     government has and the defense has are simply over the period

8     of supervised release.   We are asking the court to consider a

9     noncustodial alternative to supervised release for the following

10    reasons:

11         First, Mr. Awan has lost a job that he loved, that provided

12    for his family.   His wife lost a job that she loved and provided

13    for her family.   Even though the employers had no interest in

14    letting them go, they were essentially forced to let them go

15    because of a politicized investigation.

16         Imran has worn an ankle bracelet and has reported weekly

17    in person for over 11 months without a single issue reported.

18    Imran has provided substantial cooperation to the government

19    and accepted responsibility for the mistake.

20         Substantial cooperation included 13 debrief sessions with

21    the government, some of which lasted more than four hours long,

22    in which he answered every question.   He provided the government

23    access to his computers, his phones, cloud, all of this, which

24    has allowed the government to put forth paragraph 8 in our plea

25    agreement definitively stating that it has found no evidence of

1    violation of federal law regarding Imran's work at the House

2    of Representatives.

3        He and his family and lawyer have suffered tremendously

4    from a coordinated attack from members of the media, elected

5    congressmen, and even the president of the United States.

6    And even after the U.S. attorney has made a public statement

7    regarding these accusations in the media and made by the

8    politicians, the attacks and the accusations did not stop.

9        Imran is now and forever will be a felon.  He made a lapse

10   in judgment during a time when his father was living his last

11   month on this earth.  He accepts full responsibility for that

12   and asks the court to consider the consequences he's faced that

13   we've highlighted in our memorandum in creating your sentence.

14       By allowing Imran to put this case to bed today, it will

15   allow he and his family to rebuild their life wherever they

16   choose and will allow him to visit his father's grave and secure

17   his father's legacy.  Thank you.

18            THE COURT:  Mr. Gowan, let me ask you:  You asked for

19   -- what is it you're asking for with regard to -- I know you're

20   asking for a noncustodial sentence which is joined by the

21   government, but what --

22            MR. GOWAN:  Your Honor, we propose a fine in the

23   amount of money that cost the United States for Mr. Awan's

24   supervision, and I calculated that based on the numbers provided

25   in the presentence investigation, which would be for 11 months

1    of GPS monitoring and one day of incarceration.

2              THE COURT:  And you're proposing that in lieu of any

3    term of supervised release?

4              MR. GOWAN:  Yes, Your Honor.

5              THE COURT:  Just a minute.  I think I saw that.

6    I just want to... I'm sorry.  Did you have a calculation of

7    that fine, Mr. Gowan?  I don't see it.  I'm looking at page 22

8    of your sentencing memorandum.

9              MR. GOWAN:  So on page 2, footnote 1.

10             THE COURT:  Okay.  Oh.  That's really tiny.  All right.

11             MR. GOWAN:  The basis for those numbers were provided

12   in the presentence.

13             THE COURT:  Right.  All right.  Thank you.

14         Mr. Awan, do you wish to be heard?  You may step forward to

15   the microphone.

16             THE DEFENDANT:  Your Honor, my name is Imran Awan.

17   First I want to start off by saying thank you for allowing me

18   the opportunity to stand before you.  I --

19             THE COURT:  Mr. Awan, I know you're not used to

20   speaking in court, but because we have a court reporter here

21   taking down what you're saying, you're going to have to go a

22   little slower.

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  All right.

25             THE DEFENDANT:  So, Your Honor, thank you so much

1    for the opportunity of standing before you as a human being.

2    My name is Imran Awan.  I also want to thank your staff; the

3    prosecution; the FBI; the Capitol Police; my attorney,

4    Mr. Gowan, for being here today.  This has been a really long

5    road, and I want -- after thanking you, I want to tell you that

6    I take full responsibility for what has happened.

7         During our debriefs, in the very early stages, as it was

8    discussed in the debrief letter, this topic of indictment was

9    off limits.  But I dove right into it, and I told them that I

10   take full responsibility for this that has happened, that is in

11   my indictment, and it was lapse of judgment; it was a very

12   difficult time in my life.  And we went from there and had so

13   many different debriefs in which so many things were discussed

14   that are in paragraph No. 8 with independent evidence.

15        Your Honor, after admitting full responsibility for what

16   has happened, I want you to know why it happened.  Because

17   there's always a reason for something to happen.

18        Your Honor, in July 2016, my father decided to go to

19   Pakistan.  We tried to stop him, but he didn't stop.  He was in

20   a wheelchair at the airport.  He boarded his plane; he went to

21   Pakistan.  Two months after that, on September 26, I followed

22   him to Pakistan, and as soon I got there, he was already very

23   sick.  His kidney was not functioning properly, but we did not

24   know that.

25        By October 7, his hands had swollen up; his feet had

swollen up.  We were not exactly sure what was happening.
He was in ICU, was getting his blood cleaned in the ICU and
so forth.

Your Honor, July 2016 -- September 26 is when I pursued
him.  On October 7, I put him on a plane and sent him back
to the U.S.  He went straight to the hospital, Georgetown.
Hina, my siblings, everybody was with him every single day.
I returned to the U.S. on December 7, and the first thing I did
is I went to be with my father who I had spoken on daily basis.
They didn't allow me to come back before then.

What I went through from September to December 9 until
I returned to the United States was -- I cannot describe it in
words.  It was the most stressful time of my life as my father
was laying in a hospital dying, and we wanted to do everything
we could to save his life.

And on December 11, I was with him also, and on December 12
is when this mistake was made that I have thought about for over
a year, and I -- it's -- it's not me.  What has happened is not
me.  I was under so much stress.  But I take full responsibility
for what has happened, and I corrected that as soon as I could.

It was not a -- it was not a -- this is not who I am.  I
can't -- I can't go back in time and change it, but if I could
I would.  Because what those people did and all the stories that
they wrote...  I forgive them for doing everything that they
did, because I seek your forgiveness.

1       I'm going to move forward in my life, and if you were

2   to grant me another chance today, I promise you I'll have

3   returned this to the society 10 times over because I have a

4   purpose in life.  I am going to pay my debts.  I'm going to

5   fulfill every promise that I made to my dad.  I'm going to be

6   there for my daughters.  I'm going to be there for my family and

7   my friends.

8       Your Honor, what I'm asking you today is that -- allow me

9   to walk out of this courtroom and just take my family, and I

10  promise to you that this second chance will not go to waste,

11  Your Honor.  Your Honor, everybody that stands before you asks

12  for the same thing, but, Your Honor, I stand here with God in

13  my heart.

14      And I just want to conclude by saying my life is like a --

15  like a boat with big sails and there's no wind blowing.  And

16  the wind is my faith.  If you allow me to walk out of this

17  courtroom, I'll rebuild my life like I did when I first came

18  here in 1997.  I know how.  And that's through hard work, and

19  that's through care for my family and the other people that are

20  less fortunate.

21      So, Your Honor, if you gave me that opportunity today, I

22  promise to you, you may not remember me, but I will remember you

23  every day.  And that's going to be my motivation to rebuild and

24  give back, because I need a second chance.  Thank you for your

25  time, and thank you to everybody who's worked on this.  And I

1    have no grudges in my heart for anyone.  I'm moving forward,

2    Your Honor.

3              MR. GOWAN:  Thank you, Your Honor.

4              THE COURT:  Thank you, Mr. Awan.

5         All right.  Mr. Gowan, I have one question for you.

6    The loan application for which Mr. Awan is charged for making

7    a false statement, was that loan repaid before Mr. Awan was made

8    aware of this investigation?  That's my understanding.

9         Is that correct?

10             MR. GOWAN:  That is correct, Your Honor.

11             THE COURT:  All right.  Thank you.

12        After calculating the sentencing guidelines and departures

13   and hearing the statements made by counsel and Mr. Awan, I must

14   now consider the relevant factors, as I said before, set forth

15   by Congress in 18 U.S.C. § 3553(a) and ensure that I impose a

16   sentence sufficient but not greater than necessary to comply

17   with the purposes of sentencing.

18        These purposes include the need for the sentence imposed to

19   reflect the seriousness of the offense, to promote respect for

20   the law, and to provide just punishment for the offense.  The

21   sentence should also deter criminal conduct, protect the public

22   from future crimes by the defendant, and promote rehabilitation.

23        In addition to the guidelines and policy statements and

24   the purposes of sentencing, I must consider the nature and

25   circumstances of the offense, the history and characteristics

1   of Mr. Awan, the types of sentences available, the need to avoid

2   unwarranted sentence disparities, and the need to provide

3   restitution to any victims of the offense, which is not really a

4   factor here given that the loan in question was repaid in full

5   and that the government is not seeking restitution in this case.

6      With regard to the nature of the offense, Mr. Awan

7   pleaded guilty to making a false statement on a loan or

8   credit application, and it is a serious crime.  Making a false

9   statement to induce a federal loan is a serious offense, and

10   I understand you committed this crime while under the stress

11   of needing to send funds to Pakistan and have cash on hand in

12   case your father gets a new kidney.  And as important as those

13   factors were, you were not justified in making a false

14   statement, but it certainly explains the circumstances under

15   which you undertook that action.

16      I will note, though, that that charge is not what brought

17   you to the government's attention, and I will also note, as the

18   government stated in its Relevant Conduct, section 8 of its plea

19   agreement:

20      "The Government agrees that the public allegations that

21   Mr. Awan stole U.S. House of Representatives equipment and

22   engaged in unauthorized or illegal conduct involving House

23   computer systems do not form the basis of any conduct relevant

24   to the determination of the sentence" in this case.

25      "The Government agrees that the public allegations that

your client stole U.S. House of Representatives equipment and

engaged in unauthorized or illegal conduct involving House

computer systems do not form the basis of any conduct

relevant to the determination of the sentence in this case.

"The Government conducted a thorough investigation of those

allegations, including interviewing approximately 40 witnesses;

taking custody of the House Democratic Caucus server, along with

other computers, hard drives, and electronic devices; examining

those devices, including inspecting their physical condition and

analyzing log-in and usage data; reviewing electronic

communications between pertinent House employees; consulting

with the House Office of General Counsel and House information

technology personnel to access and/or collect evidence; and

questioning your client during numerous voluntary interviews.

"The Government has uncovered no evidence that your client

violated federal law with respect to the House computer systems.

Particularly, the Government has found no evidence that your

client illegally removed House data from the House network or

from House Members' offices, stole the House Democratic Caucus

Server, stole or destroyed House information technology

equipment, or improperly accessed or transferred government

information, including classified or sensitive information."

The government included that extraordinary paragraph in

its plea agreement, which I commend it for, given what Mr. Awan

was initially accused of and the thorough investigation and

cooperation that he has participated in.  So while the nature

of the offense in this case is a felony and is serious, it is

one that was brought to the government's attention based on its

thorough investigation of unfounded allegations against Mr. Awan

and his family.

Turning to Mr. Awan's characteristics as an offender,

Mr. Awan and his family are immigrants to this country.  They

came here legally.  They have worked hard.  They have been

successful.  He has supported his family since they moved to the

United States in 1997, beginning with running across the street

to work at a McDonald's when he was still in high school so he

could help to support his family.

He excelled while working on Capitol Hill for various

members of Congress, several of whose staff have written letters

in full support for Mr. Awan.  He has remained strong for his

family despite the unbelievable onslaught of scurrilous media

attention to which he and his family have been subjected.

He has attempted to work and has continued to seek

employment while on release despite the fact that the negative

publicity from this case has affected his ability to keep a job.

Since April 2018, he has been employed as an office manager at

his attorney's law firm here in Washington, and he has been in

compliance of his conditions of release.

Moreover, the court notes that Mr. Awan repaid the loan

money before he was even aware of the investigation in this

1    case.  It does not necessarily negate his culpability in making

2    the false statement, but certainly shows that this was not an

3    ongoing pattern or practice of his.

4        Turning to the types of sentences available, as I pointed

5    out earlier, making a false statement on a loan or credit

6    application carries a maximum sentence of 30 years as well as

7    a term of supervised release of not more than five.

8        The guidelines range for this offense, based on a total

9    offense level of 5, is zero to six months.  Under the

10   guidelines, I could sentence Mr. Awan to two to five years of

11   supervised release.  The government is asking for a noncustodial

12   sentence in this case.  Probation has recommended a sentence of

13   time served, with 12 months of supervised release.

14       I have to also consider the need to avoid unwarranted

15   disparities in sentencing, which is a factor that Congress has

16   set forth in 3553(a).  I have done some research into this issue

17   of defendants who have pleaded guilty to the same crime as

18   Mr. Awan.

19       In 2017, in the D.C. Circuit, individuals guilty of an

20   offense under §2B1.1 served an average sentence of imprisonment

21   of 15 months, with a median sentence of 12 months.  Individuals

22   sentenced under §2B1.1 with a criminal history of I received an

23   average and median sentence of 13 and 10 months respectively.

24       Let me say some things for the record.  Based on the

25   materials submitted by defense counsel, as I said before, the

1    onslaught of negative media coverage, harassment, threats to

2    Mr. Awan and to his family, is something that, because of the

3    nature of the Internet and social media today, will probably

4    continue for a very long time.

5         Mr. Awan has been under the court's supervision and under

6    pretrial supervision, wearing an ankle bracelet and complying

7    with pretrial supervision conditions for -- approximately a

8    year, Mr. Gowan?  Is that right?

9         MR. GOWAN:  Yes, Your Honor.

10        THE COURT:  His children have had to change schools.

11   His family has been subject to harassment.  He will forever

12   have a felony conviction on his record, and these things will

13   not change.

14        There have been numerous, baseless accusations, conspiracy

15   theories linking Mr. Awan to the most nefarious kind of conduct,

16   all of which have been accusations lobbed at him from the

17   highest branches of government, unfounded, while this case was

18   pending and all of which have been investigated and found to be

19   untrue by the United States Department of Justice and the FBI.

20        It is this court's opinion that Mr. Awan and his family

21   have suffered sufficiently.  He has fully cooperated with the

22   government, he has accepted responsibility for his criminal

23   behavior, and he has paid a price that he will continue to pay.

24        Therefore, this court believes a penalty of time served and

25   a period of supervised release is sufficient but not greater

1    than necessary to reflect the seriousness of the instant

2    offense, to promote deterrence, to protect the public from

3    future crimes that may be committed by Mr. Awan, to avoid

4    unwarranted disparities among defendants convicted of serious

5    crimes.

6         With regard to deterrence and protection from future

7    crimes, this court has no doubt that Mr. Awan will rehabilitate

8    himself and continue to be a productive citizen of this country.

9    This court has very little concern that a sentence needs to

10   deter Mr. Awan from future criminal conduct.  This court has

11   very little concern that Mr. Awan or his family pose any threat

12   to the public safety.  Therefore, based on my consideration of

13   all the §3553(a) factors, I'll now state the sentence to be

14   imposed.

15        Will you stand, Mr. Awan?

16        (Defendant complies.)

17        It is the judgment of the court that you, Imran Awan, are

18   hereby sentenced to time served on Count 3.  You are further

19   sentenced to three months of supervised release.  I am not

20   going to fine you for the conditions of release which you were

21   ordered to follow by virtue of the fact that the government

22   decided to investigate you.

23        You are further ordered to pay a $100 special assessment.

24   The court finds that you do not have the ability to pay a fine

25   and therefore waives imposition of a fine in this case.   The

special assessment of $100 is immediately payable to the Clerk

of the Court for the U.S. District Court of the District of

Columbia.  Within 30 days of any change of address, you shall

notify the Clerk of the Court of the change until such time as

the financial obligation is paid in full.

You shall report in person to the probation office.

While on supervision, you shall submit to the collection of DNA,

you shall not possess a firearm or other dangerous weapon, you

shall not use or possess an illegal controlled substance, and

you shall not commit another federal, state, or local crime.

You shall also abide by the general conditions of supervision

adopted by the U.S. Probation Office.  This court will not set

any further conditions for your supervised release.

The probation office shall release the presentence

investigation report to all appropriate agencies in order to

execute the sentence of this court.

Pursuant to 18 U.S.C. § 3742, you have a right to appeal

the sentence imposed by this court subject to certain rights of

appeal that you waived as part of your plea agreement in this

case.  If you choose to appeal, you must file an appeal within

14 days after the court enters judgment.

As defined in 28 U.S.C. § 2255, you also have the right to

challenge the conviction entered or sentence imposed if new and

currently unavailable information becomes available to you or on

a claim that you received ineffective assistance of counsel in

1    entering a plea of guilty to the offense of conviction or in

2    connection with sentencing.  If you are unable to afford the

3    cost of an appeal, you may request permission from the court to

4    file an appeal without cost to you.

5         Mr. Cooney, Mr. Gowan, are there any objections to the

6    sentence imposed not already on the record or anything else we

7    should address today?

8              MR. COONEY:  No objection from the government.

9              THE COURT:  Mr. Cooney, are you at this point going

10   to dismiss the charges against Ms. Alvi?

11             MR. COONEY:  We move to dismiss, actually, counts 1,

12   2, and 4 against Mr. Awan --

13             THE COURT:  Yes.

14             MR. COONEY:  -- and all counts against Ms. Alvi.

15             THE COURT:  The motions are granted.

16             PROBATION OFFICER:  Your Honor, the probation office

17   would ask that mandatory drug testing be waived for the defendant.

18             THE COURT:  Thank you for reminding me of that.  Yes.

19   Mandatory drug testing is waived for Mr. Awan.

20        Mr. Awan, good luck to you.  Have a good day.  I am

21   confident that you will move on from here, and I wish you the

22   best of luck.

23        Mr. Cooney, I appreciate the government's position and

24   their conduct during this case while this case was pending.

25   Thank you.

1            MR. GOWAN:  As do we.

2            THE COURT:  All right.

3        (Proceedings adjourned at 11:41 a.m.)

* * * * * *

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.


_Bryan A. Wayne_
BRYAN A. WAYNE